Good morning. May I please the court and counsel? For decades, this court and the South Dakota courts have been telling employers, such as the City of Milbank, and its employees, such as its city administrator and police chief, that employees do not have a liberty interest where they do not disclose, the employer does not disclose, the reasons for the termination, and there's no evidence of serious damage to their reputation. They have been telling the employers that there is no free speech retaliation claim where the speech is made that was part of the job duties, and the speech that was made was not the material or substantial reason for the termination. And they've been telling employers that the employees do not have due process right claims where there's not a liberty interest that creates it, First Amendment doesn't create it, and where the employee is an at-will employee under South Dakota clearly established law. But here, I believe the district court did not apply these legal, long-standing legal norms, and instead essentially created new law by not applying these norms, and the district court should have applied those, or should have determined that the law was not clearly established because they created new law, and should have applied the qualified immunity for the defendants. Which start with clearly established. What has to be clearly established here? What has to be clearly established is that the law has to be sufficiently clear, clearly established at the time of the alleged violation. And we believe that the law that the district court essentially created by not applying what this court has already said to be the law, we believe the district court essentially created some new law by not requiring some of the elements of what this court has said has to be there for the various claims. Okay, we're talking about this specific case. In this specific case, is it a speak-out issue? Is it a, you gave us a lot of different issues there. I don't know which you're talking is clearly established, because some of the stuff you talk about is clearly established, you know. But don't go there. Tell me about your, the clearly established you think resolves the case the quickest. The clearly established, there is no liberty interest, because the liberty interest has to have serious damage and the employer has to disclose the reasons. And the district court didn't even look at those elements. And so when you look at those elements, if you, it's a clearly established law that you have to have those, but the district court didn't even look at those elements. So it essentially created a new law, in my opinion, that what is needed to establish the liberty interest. The free speech, we believe relative to that, what the clearly established law was that the employee has to speak about something that's not part of his or her duties. And the district court didn't even look at that element, so the law that the district court was applying essentially was a new law that you don't even look at the element of whether or not that employee was performing his or her job duties when they were speaking. And when we look at that free speak, let's just talk about that one right now, the free speech claim, you have to, as a threshold, determine whether or not the employee was speaking pursuant to their job duties. It's something the district court here didn't even look at. What the district court here did is to say he was speaking about a public concern. But it's been, this court has said that you have to first look at whether or not the duties that were being performed or the speech that was being made was part of the job duties. How close does it have to be to the job duties? Immigration is a hot issue. Some places are sanctuary cities. Some aren't. The policeman goes and arrests someone, and after arresting them, then the police talks to the mayor and councilman and says, we ought to be a sanctuary city. These arrests are stupid. Is that part of the duty or not? Your Honor, I think with respect to the Grunwald case, if it stems from or owes an existence to the professional responsibilities, the controlling factor is whether or not the speech was in the course of the job duties. And when you look here, there are the appendix 252, the policy that says the employee has a duty to report any concerns about equipment. The employee has a duty to report any condition that he or she may think is safe. And here, what is so different than a lot of the other cases that these courts in the Eighth Circuit have looked at is that the employer is challenging here that the speech was part of the performance of the job duties. And here, we have solid admissions by the employee. This employee testified in response to the deposition questions that he knew of the condition of this seat belt and tires, his free speech purportedly, because of his job duties. That he reported it because of his job duties. That he believed he had, in fact, a duty to report it, to speak, because of his position. And he admitted that he was speaking pursuant to his official job duties. And when you have that, that tie is so close right there in terms of the employee admitting, I made this speech pursuant to my official job duties. And if it's pursuant to the official job duties, if it stems or owes the existence of the professional responsibility, then that speech is not free speech protected. You don't even get to the other elements of the free speech claim. You don't get to the issue of the operations of Pickering balance test. Kincaid says that. Lyons case says that. You don't get to the material and substantial reasons within that free speech. And I wanted to draw this court's attention to the more recent Lyons in 2017 and Grunewald cases that were free speech qualified immunity cases. Where the court said, you have to, as a threshold, get over that issue of whether or not the free speech is even protected. Whether it's a performance of the duties. And here, I don't think the district court properly applied that test. Essentially just passed over that test, thereby putting in what I believe kind of is a new law because it didn't require that element. So if the court would have applied that to the free speech, the defendant should have gotten the qualified immunity. If the court would have applied the liberty interest relative to the case, the liberty interest, what the district court said is, this employee has pre-termination due process because he has a liberty interest claim. Well, this court has said in Wachowski, that is not true. Liberty interest and due process are completely two different things. So that can't be a basis for denial of the qualified immunity. This court has said that you have to show the serious damage to the reputation and a disclosure, a public disclosure of the reasons. And this court, the district court, did not apply that. The district court didn't even look at the issue of whether or not the employer disclosed the reasons for the termination. In fact, the record only shows that the employer said, it's a personnel reason. We're not going to disclose it. So there wasn't a public disclosure. Back to the First Amendment retaliation question. Is the question of whether he is speaking pursuant to his duties a fact question or a law question? I think as a threshold, this court has to make a decision as to whether or not the speech is protected. So I think that's a question of law as to whether or not the court has to decide whether the speech that was made was protected. But that's based on whether he's speaking pursuant to his duties or not, right? Right. And so is that a fact question or a law question? No, I think that's a question of law. In the McCulloch A Circuit Court case, the conic United States Supreme Court case, the courts have said it's for the court to decide whether or not the speech is protected. So as a threshold matter, I think it's this court's obligation to decide whether or not he was speaking pursuant to his official duties. And I think when we look at the Lyons case and the Grimlock cases, 2017 and 18, that's what the court did. Counsel, what if it's a mixed question of fact or law? Does that affect the standard of review? Qualified immunity standard review is de novo. So just in terms of the qualified immunity, I don't believe so. Relative to whether or not the speech was protected, I still believe it's a question of law for this court to decide whether or not the speech was protected, not whether or not the ‑‑ I don't think it's something the jury decides whether or not the speech is protected. I think that's for the court. Do you have any analogous cases where an employee is complaining about the condition of some equipment, something like that, and whether that's speaking out about that as a matter of public policy or course of duty? I can't speak directly to the course of ‑‑ the only three cases that I found in the Eighth Circuit would be the Shands case, but there the court just looked at whether or not it was a public concern, didn't look at the performance of the duties, just said it's a public concern, and I think we have to step back, and I believe that's what the court did in Garcetti, the United States Supreme Court, is to say we're not just going to look at whether or not the issue is a public concern. We first have to look at whether or not the issue relates to the performance of duties. I don't have a case that specifically relates to the safety of the equipment where the employer is challenging it and where the employee hasn't made any admission, and here I think that's what really sets this case apart is that Mr. Mogard made these admissions that he believed, himself believed, his own admission that he was speaking pursuant to official job duties. He spoke to the City Council. He spoke to his chain of command about this, and he admitted that this was pursuant to his job duties, and I think that ends the analysis of that. Counsel, could you address this court's jurisdiction over the city's appeal and whether their defense is inextricably intertwined with the qualified immunity defense of the other parties? Certainly, Judge Gross. I believe that if this court determines that the individual should have gotten qualified immunity, I think that applies equally to the city because the city can only act through its employees, so if the qualified immunity is granted to the two individuals, it should also be granted to the city as well, and the city can only act through its policies that were in effect at the time, and so I believe the city also has a qualified immunity for that. The district court's decision on due process, Your Honor, I believe what the district court did there is to create due process for the liberty interest, create due process for the First Amendment issue, and this court has made it very clear that you don't get due process rights for liberty interest claims. The Woloszewski case, you don't get due process. Counsel, could I interrupt you and ask you a quick question? You know the answer to probably, and I don't. The Shands case that the other side relies on a lot, have we cited that? Has it been cited in modern times for us? The Shands case is a 1993 case, and I don't believe it's been cited as any authority because when you look back into the Lyons case in 2017 and the Grunewald case in 2018, it's not a case that is being relied upon by this court anymore. I also don't think it's infortimate at all because there was no discussion on whether or not the speech was made pursuant to the job duties. The speech was just analyzed under the idea of, well, he was speaking about something that's public, and we have to step back and look whether or not it's performance of job duty speech. So I don't see anything that's been citing that Shands case. Well, it's the closest thing to equipment, don't you think? It's our closest case on equipment. It certainly is, but there there were no admissions by the employee. There was no discussion at all whether or not the policy said anything about whether the employee had a duty to speak out about equipment. And here, Appendix 252, we specifically have policies that say the employee has a duty to speak out about equipment to their superiors, and that was the purported free speech here. I see I have three minutes left, and I'd like to reserve that for Buttle, if I may. We are asking this court to reverse the district court's denial of qualified immunity. Thank you. May it please the court. This is Marceau. Your Honors, my name is Tom Wilka. I'm an attorney from Sioux Falls, South Dakota, representing David Mogard. With me today is Sarah Schrader, an attorney in my office who has assisted with this case and is on the brief. And I think that the heart of this case is about the jurisdiction of this court to review this appeal because it is an interlocutory appeal on the denial of qualified immunity, which is an almost unique opportunity for a defendant to approach this court before there's a final judgment. And so there are special rules for this interlocutory appeal, one of which is that the court examines whether or not it has jurisdiction. And this court has held repeatedly it does not have jurisdiction to review factual issues. And there are factual issues that the appellants, the city and the two employees, are asking this court to decide in its favor in order to decide this case in its favor. Well, counsel, state the facts most favorable to you because we do have cases that say we can take the facts most favorable to you and still rule on it now. Yes, there are those cases. And those facts would be that David Mogard spoke out on a matter of public concern, which was the poor level of condition of the police vehicles, bad tires which interfered with a chase that allowed somebody to get away, bad tires that were unsafe, bad seatbelts that were unsafe. These are matters of public concern, and I think Shands stands for that very clearly. And although Shands may be a 1993 case, it's not that old, or at least it doesn't seem like it's that old. And it hasn't been reversed, and it's still good law. And the district court ruled that poor condition of police vehicles is a matter of public concern. Do you know if we've relied on Shands in modern times? I can't say that one way or the other. Once again, I would say modern times is a very relative term, and I think it's still a— I just mean has it been cited, has it been quoted, has it been—I was being elliptical. Yes. I can be more precise. But it has certainly not been reversed. Anyway, the— Isn't the question of whether the speech is protected a legal question? Under the context and the posture of this case, there are factual issues about whether or not the speech is protected speech. One reason for that is that the city points to a generic policy about reporting unsafe conditions of equipment that applies to all city employees. We rely on an essential job functions list that's very detailed that is specific to law enforcement. And even if you go to the common rule that when you have both specific and general, you go to the specific for the determination, that would apply here. But the other thing is, there is a factual determination to be made about whether Mr. Mogard's speech was as a matter of public concern, which we've already talked about, but whether it was part and parcel of his duties. And it was not part and parcel of his duties. And the regulation, the policy that the city relies upon in the policy manual, does not require Mr. Mogard to address those concerns to the city administrator or the city council member, Mr. Wiener. It says you must bring those to the attention of your supervisor. And those people are not his supervisor. His supervisor would be Assistant Chief Cory Huth. Mogard did bring his concerns to the chief for years. And in response to that, the chief considered him a troublemaker. And so when it came time for the termination, that was one of the things that the chief cited in his memorandum, that this guy's unhappy in his job and he's always complaining and he's just a bad, a poison pill in the department. The fact of the matter is, Mogard clearly- Doesn't it seem like it has to be a part of his duties? In other words, the only way he would have discovered it is by virtue of operating the vehicle every day, which is, of course, part of his duties. You know, the vehicle needs to be operated in a safe manner. You don't want him sliding off the road or running into other cars if the brakes don't work, that sort of thing. Tell me, just as a matter of common sense, why this is a matter of public policy versus just simply part of his duties. I think Lane V. Franks made that distinction, and that is, is the report part of his job duties? Is it required of him? Or is it just something that concerns his job? In other words, a police officer is going to know the condition of those vehicles simply because he's a police officer and he uses the equipment. But other people can observe those things. But there's nothing that says, Milbank police officers, if you have a concern, you must report these to the city administrator or the city council. In fact, that would be considered a violation of the chain of command, which is common in all police departments. And Mogard, when he testified, he didn't make a clear admission that it was part of his duties, not whatsoever. I mean, he was asked about it, and first he said, I followed the chain of command. And then he later said, I think I was fired because I made the report to Mr. Kettwig and Mr. Weiner. He didn't say that he was fired because he made the report to the chief or the assistant chief. That, I think, would be perhaps within his duties. But he did do that. He isn't saying that's why he was fired. His deposition makes that clear. It's when he went to the city council member that he was fired. And, counsel, let me interrupt you to ask you, in the Lyons case, I bet you're familiar with it, there's this transforming issue. It talks about transforming what began as unprotected speech, pursuant to that guy was a lecturer, into protected speech by virtue of addressing it to the chancellor of the whole school and community leaders. And you know the result of the Lyons case. Tell me why that the transforming discussion, and if I'm talking about it, Jan, you don't tell me, because I've focused on that, obsessed with that. Tell me why that doesn't apply here, because the court says perhaps it was a transforming, but to argue the transforming report, it can't be clearly established. You know what the court does there, that little transforming point is the turn of the opinion, I think. Yes, your honor. But, first of all, I would say two things about that. It's clearly established that an employee has a right to talk, to speak publicly to public officials about matters of public concern. It is also the case that as a member of the public, Mr. Mogard could speak to the city councilman, Mr. Wiener, and that's what he did. And that's clearly what he testified, why he thought he was fired. And with Mr. Kettwig. They are not his supervisors, under the regulation that the city relies upon so heavily. They are people who are there elect, well, Wiener anyway, elected by the public. Mr. Kettwig was not only the city administrator, he was also the HR director of the city, so he clearly had to understand that there are protections for free speech on matters of public concern. That's been the rule since Connick v. Myers. But in addition to that, even though the district court found that Mr. Mogard was an employee at will, under South Dakota law, the policy adopted by the city of Milbank said, before you get terminated for any reason, whether it's for speaking out or for protecting your liberty interest, or whatever the case may be, before an employee gets terminated for any reason, that employee is entitled to these due process rights. Notice of what the accusation is. An opportunity to submit what his side of the case is. A meeting with a supervisor. All of those things are laid out in the policy. Now, Milbank didn't have to adopt that policy as part of its policy regarding employees at will, but it did. And the common rule is that once a governmental entity adopts a policy, it has to follow it like it's the law, and that is the law in this case. Counsel, how were those procedures inadequate in this case? There was a built-in inadequacy because the policy says that the employee may be terminated by the city administrator with the approval of the council. And then it says if the employee files a grievance, the last city-level review is by the council. So the same body that had to approve, and in Mogard's case did approve his firing, is the body in the procedures that has the final review. It's as though your honors were consulted about whether the employee should be fired, and now you're going to sit in review of that decision. That's what the Milbank policy was written. It's a poorly written policy. Counsel, isn't that rather routine in the context of similar situations, including the Administrative Procedures Act, where a government entity may have a hearing by the same agency that terminated the employee? Well, by the same agency, Your Honor, but I don't find this routine, and I've been through a lot of different grievance procedures with a lot of different cities and other governmental entities, and I think it's more common that the chief would have the discretion to terminate the employee, and then the employee has the steps to ask for review, the final one being the city council. That's much more likely, not that the city council already met, decided to terminate him by violating all of its other procedures about notice and opportunity to be heard and all those things, and then is the final review. And that also, as a slight digression, brings us to the point about the reputation, and the city says repeatedly that the city did nothing to publicize that Mulgaard was terminated. Well, the minutes of the city council from May 25, 2016, clearly say the council voted unanimously to terminate David Mulgaard immediately, and in a small town, 3,300 people in Milbank, people are going to wonder, why did one of our six police officers suddenly get fired by the council without any reason? And just as Corey Huth testified in his deposition that in a small town, the rumors are often worse than the truth, I think that's generally true. But didn't he have the opportunity, undisputedly have the opportunity for a name-clearing hearing, either with the mayor or Mr. Ketwig or the city council, and he chose not to do that? No, Your Honor. He asked for a meeting with the mayor. The mayor did not respond. He had a meeting with Mr. Ketwig, but Judge Corman correctly ruled that that was not a name-clearing hearing because Ketwig did not have the power to reinstate him. He did have the opportunity for the final grievance step with the city council. He submitted a written response and appeared before the council. The council never rendered a decision. They gave no decision to his grievance. That grievance, technically, still has not been decided. So, I mean, that is certainly contrary to due process. And because there was no decision, he had no opportunity to go to the South Dakota Department of Labor with the next step of a grievance appeal, even though under these circumstances, I don't believe that would have been required for us to go into federal court. But the fact of the matter is, he availed himself of all of those opportunities, but they were all post-termination. At that point, he had been fired. He had been given, essentially, a one-sentence letter from the chief, and the chief brought him into the office and said, here's the letter. Hand in your equipment to Assistant Chief Huth. And it was done, but he still sought out Mr. Ketwig two days later. He filed the grievance in a timely manner. He appeared before the city council. But the city council, as I said, was the same body that had decided to fire him to begin with. Counsel, don't we have to look at the post-termination proceedings together with the pre-termination name-clearing process as a whole? I think we do in the sense, Your Honor, that if the post-termination proceedings had been ignored by Mr. Mogard, he would have a great deal of trouble. And you've decided cases along that line. But that's not the case here, and it's not the law. I mean, he did avail himself of those post-termination proceedings, but it didn't do him any good. And because of the built-in problem with the Milbank policies, it's really not a big surprise that it didn't do him any good. But on the question of protected speech, it was protected because of his speech to Mr. Ketwig and Mr. Weiner was not a policy, was not required, was not part of his job duties. It was as a member of the public that he went to them after going to the chief had done no good whatsoever, and he had been doing that for a number of years. Temporal proximity was not the only reason that Judge Corman ruled on that, because Chief Van Voren had testified that he was the cause of these other officers quitting the department, and we submitted an affidavit from one of those officers saying that was not true. I went to get a better job with the tribal police, and that is the affidavit of Michael Morgan. Very well. Thank you, Mr. Wilco. Ms. Marceau, rebuttal, please. Thank you, Your Honor. Let me start with liberty of interest. You have to publicize a reason, not just that the person was terminated. City councils can only act in open session. That's in a minute. No reason was given. Name-clearing hearing, Judge Grazza, you asked about that. Yes, he was given the opportunity. He had three post-termination meetings. He requested a meeting with the mayor before termination. During the post-termination meetings, he was given the opportunity to meet with the mayor. He had a two-hour meeting with the city administrator, and he went before the city council and agreed his termination, at which time he could present anything. This court has made it very clear in the Delaney, the Kretz, the Gaten cases, that the post-termination meetings can cure any pre-termination deficiencies. And to get to the issue of isn't it very common that the city council, the same body, is going to act continuously before and after? Yes, it's very common. Twenty-five years of representing public entities, that's what they do. The city council may be involved as an initial threshold, and then they can be involved in reviewing the decision, and that doesn't violate any law. You have to show that that city council has actual bias in order to have it not be an appropriate post-termination meeting, and there's no evidence of anything relative to bias. On the issue of free speech, lastly, Mr. Wilka said that an employee has a right to speak on a public concern. Absolutely employees have a right to speak, but they don't have First Amendment free speech protection in terms of being terminated related to free speech where that free speech relates to a matter of performance of duties. And when I asked him, appendix 57, deposition page 85, were you speaking as part of your job duties to the city council members? Yes, I was following the chain of command. Meaning you went to them because you believed it was in your official duties? Yes. So he clearly was speaking on these issues in performance of his job duties, therefore, while he can speak about it, he certainly can be terminated. We don't believe that's the reason he was terminated. If we even get to that material and substantial threshold, that was all speculation, and we've cited to the court what was in the record on that. But you certainly don't have a right to have job protection. Wouldn't it be part of his duties to take the issue to the chief or whoever is next in the line of command, but maybe it becomes when he goes to the elected city council, does it then become a matter of public policy? No, Your Honor. I believe that all along that is performance of his job duties as he admitted. But you just told us this is the only tribunal in town. Surely sometime he's got the right to say something public. He has an absolute right to say something public at any time, but he doesn't have job protection. If it's related to the performance of job duties, you can speak about anything, but you can be terminated lawfully if you're speaking about something that's the performance of your duties. He knew about the tires. He knew everything because of his duties. He spoke to the individuals because of his duties, and that's where you don't have the protection, Judge Benton. Thank you. We ask for a reversal on the qualified immunity. Very well. The court would like to thank counsel for their arguments and briefing. The case will be submitted and decided in due course. Thank you, judges. Ms. Hyatt, would you call our second case for argument, please? The second case today is 18-1539, District of North Dakota, MBI Energy Services v. Robert Hawk.